UM

MAGISTRATE JUDGE SCHENKIER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE FEINERMAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. **13 CR 854** |
| vs. | ) | |
| | ) | Violations: Title 18, United States |
| RICK E. BROWN, | ) | Code, Sections 1035, 1347 |
| ROGER A. LUCERO, M.D., and | ) | and 1349 |
| MARY C. TALAGA | ) | |

**FILED**

OCT 23 2013

MICHAEL T. MASON
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

**COUNT ONE**

The SPECIAL MARCH 2013 GRAND JURY charges:

1.  At times material to this Indictment:

**The Medicare Program**

a.  The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

b.  Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

c.  The Medicare program included coverage under two primary components, hospital insurance ("Part A") and medical insurance ("Part B"). Part B of the Medicare Program covered the cost of physicians' services, including those at issue in this Indictment.

**FILED**

OCT 23 2013
OCT 23 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

d.      Wisconsin Physicians Service was the CMS-contracted carrier for Medicare Part B in the state of Illinois. TrustSolutions, LLC was a Program Safeguard Contractor for Medicare Part B in the state of Illinois.

e.      By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and service bulletins describing proper billing procedures and billing rules and regulations.

f.      Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider. When an individual medical provider was associated with a group practice, Medicare Part B required that the individual provider number associated with the group be placed on the claim submitted to the Medicare contractor.

g.      Medicare Part B regulations required health care providers enrolled with Medicare to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of the patients to whom services were provided and from whom claims for payment were submitted by the physician. These records were required to be sufficient to permit Medicare, through WPS

2

and other contractors, to review the appropriateness of Medicare payments made to the health care provider under the Part B program.

h.      Providers could submit claims to Medicare only for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

i.      To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form, containing the required information appropriately identifying the provider, patient, and services rendered.

j.      Home health care was a set of health care services available to Medicare patients who were homebound. The services available included skilled nursing, physical and occupational therapy, and speech pathology services.

k.      For a patient to be eligible to receive home health care services covered by Medicare, a physician must certify that the patient was confined to the home; that the patient needed skilled nursing, physical or occupational therapy, or speech pathology services; that a plan of care had been established and was periodically reviewed by the physician; and that the services were furnished while the patient was under the care of a physician.

l.      In certain limited circumstances, the physician who certified a patient to receive home health care could bill Medicare for the time the physician spent supervising the home health care provided to the patient by other medical-care professionals. Such supervision was referred to as "care plan oversight," or "CPO."

m.      Under Medicare Part B, for a physician to have billed for CPO, the patient must have needed complex care that required ongoing physician involvement; the oversight must have been provided during a time when the patient was receiving home health care or hospice

3

services covered by Medicare; the physician must have documented the oversight services furnished, the length of time the services required, and the date they were provided; and the physician must have provided at least 30 minutes of oversight within the calendar month for which payment is claimed. In addition, the only physician who could bill for CPO was the physician who signed the patient's plan of care.

### Defendants and Their Companies

n. Medicall Physicians Group, Ltd. was a visiting physicians group that purportedly certified patients for home health care, prepared plans of care, visited patients in their homes, and provided CPO. Medicall was located at 2040 Algonquin Road, Suite 501, Schaumburg, IL, 60173.

o. Home Care America, Inc. was a company that administered the day-to-day operations of Medicall. Home Care America, Inc. was located at 2040 Algonquin Road, Suite 501, Schaumburg, IL, 60173.

p. RICK E. BROWN, a resident of Winnebago County, Illinois, was the President of Home Care America, Inc. and controlled the day-to-day operations of Medicall.

q. ROGER A. LUCERO, M.D., a resident of DuPage County, Illinois, was a physician licensed in the State of Illinois and was the Medical Director of Medicall.

2. From in or around January 2007 and continuing through in or around December 2011, at Cook County, in the Northern District of Illinois, and elsewhere,

RICK E. BROWN and
ROGER A. LUCERO, M.D.,

defendants herein, did conspire with each other and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, knowingly and willfully to

4

execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, which conspiracy is further described below.

### Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for defendants RICK E. BROWN, ROGER A. LUCERO, M.D., and others to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

4.      It was part of the conspiracy that RICK E. BROWN, ROGER A. LUCERO, M.D., and others caused the submission of false and fraudulent claims to Medicare for CPO services that were never provided, including claims for services purportedly rendered to beneficiaries who were in fact deceased at the time the services were purportedly rendered.

5.      It was further part of the conspiracy that RICK E. BROWN directed employees to bill Medicare for CPO services for beneficiaries regardless of whether such services were provided.

6.      It was further part of the conspiracy that ROGER A. LUCERO, M.D. and others created false documentation in Medicall's files that made it appear as if they had performed CPO services for specific beneficiaries on specific dates, when in fact no such services were provided.

5

7.     It was further part of the conspiracy that RICK E. BROWN and ROGER A. LUCERO, M.D. caused the submission of false and fraudulent claims for prolonged patient visits to Medicare as a means of obtaining compensation for physician travel time.

8.     It was further part of the conspiracy that RICK E. BROWN forged physician signatures in patient medical records.

9.     It was further part of the conspiracy that RICK E. BROWN, ROGER A. LUCERO, M.D., and others caused the submission of over $12 million in claims to Medicare for the cost of physician home care and other services, and received from Medicare over $4.7 million.

10.     It was further part of the conspiracy that RICK E. BROWN and ROGER A. LUCERO, M.D. transferred and disbursed, and caused the transfer and disbursement of, monies from the corporate accounts of Medicall to themselves and others.

11.     It was further part of the conspiracy that RICK E. BROWN, ROGER A. LUCERO, and others concealed and hid, and caused to be concealed and hidden, the acts done and the purpose of the acts done as part of the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

6

## COUNTS TWO THROUGH SEVEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      The allegations of paragraph 1 of Count One are incorporated here.

2.      From in or around January 2007 and continuing through in or around December 2011, at Cook County, in the Northern District of Illinois, and elsewhere,

RICK E. BROWN and
ROGER A. LUCERO, M.D.,

defendants herein, participated in a scheme to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, which scheme is further described below.

3.      It was part of the scheme that RICK E. BROWN, ROGER A. LUCERO, M.D., and others caused the submission of false and fraudulent claims to Medicare for CPO services that were never provided, including claims for services purportedly rendered to beneficiaries who were in fact deceased at the time the services were purportedly rendered.

4.      It was further part of the scheme that RICK E. BROWN directed employees to bill Medicare for CPO services for beneficiaries regardless of whether such services were provided.

5.      It was further part of the scheme that ROGER A. LUCERO, M.D. and others created false documentation in Medicall's files that made it appear as if they had performed CPO services for specific beneficiaries on specific dates, when in fact no such services were provided.

7

6.     It was further part of the scheme that RICK E. BROWN and ROGER A. LUCERO, M.D. caused the submission of false and fraudulent claims for prolonged patient visits to Medicare as a means of obtaining compensation for physician travel time.

7.     It was further part of the scheme that RICK E. BROWN forged physician signatures in patient medical records.

8.     It was further part of the scheme that RICK E. BROWN, ROGER A. LUCERO, M.D., and others caused the submission of over $12 million in claims to Medicare for the cost of physician home care and other services, and received from Medicare over $4.7 million.

9.     It was further part of the scheme that RICK E. BROWN and ROGER A. LUCERO, M.D. transferred and disbursed, and caused the transfer and disbursement of, monies from the corporate accounts of Medicall to themselves and others.

10.    It was further part of the scheme that RICK E. BROWN, ROGER A. LUCERO, and others concealed and hid, and caused to be concealed and hidden, the acts done and the purpose of the acts done as part of the scheme.

11.    On or about the dates enumerated below, in the Northern District of Illinois and elsewhere,

RICK E. BROWN and
ROGER A. LUCERO, M.D.,

defendants herein, did knowingly and willfully execute, and attempt to execute, the above described scheme, as follows:

8

| Count | Defendant | Medicare Beneficiary | Purported Date of Service | Description of Items Billed | Amount Billed to Medicare |
|:---:|:---:|:---:|:---:|:---:|:---:|
| 2 | BROWN LUCERO | R.C. | 12/31/2009 | G0181 – Physician supervision of patient on home health care | $144.27 |
| 3 | BROWN LUCERO | F.Q. | 2/6/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |
| 4 | BROWN LUCERO | G.W. | 5/21/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |
| 5 | BROWN LUCERO | A.B. | 6/11/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |
| 6 | BROWN | M.K. | 2/3/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |
| 7 | BROWN | F.Q. | 7/9/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |

All in violation of Title 18, United States Code, Section 1347.

## **COUNT EIGHT**

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      The allegations of Paragraphs 1(a) through 1(d) and Paragraphs 1(g) through 1(q) of Count One of this Indictment are incorporated here.

2.      At times material to this Indictment:

a.      Medicare rules and regulations required physicians who billed CPO services to Medicare to document in the patient's records the services furnished and the date and length of time associated with those services.

b.      Medicare rules and regulations required that certain information, including the date or dates of service, be submitted to Medicare before any claim relating to the service could be processed.

c.      MARY C. TALAGA, a resident of Cook County, Illinois, was employed by Medicall and Home Care America, Inc. TALAGA submitted claims to Medicare on behalf of Medicall and the medical professionals enrolled with Medicare who were employed by Medicall. At times, TALAGA did business as MidWest Medical Practice Consultants.

3.      Beginning no later than in or about January 2010, and continuing until in or about December 2011, in the Northern District of Illinois and elsewhere,

RICK E. BROWN,
ROGER A. LUCERO, M.D., and
MARY C. TALAGA,

defendants herein, knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device a material fact, in a matter involving a health care benefit program, that is, Medicare, in connection with payment for healthcare benefits, items, and services, which scheme is further described below.

10

4.    It was part of the scheme that BROWN, LUCERO, and TALAGA were aware that Medicare required that CPO services be documented, and were aware that personnel at Medicall had not documented them.

5.    It was further part of the scheme that TALAGA, at BROWN's direction, billed Medicare for CPO services notwithstanding her awareness of the lack of proper documentation, and informed personnel at Medicall, including RICK E. BROWN and ROGER A. LUCERO, that she was doing so.

6.    It was further part of the scheme that when TALAGA billed Medicare for CPO services, she fabricated material information that would have been included in the missing documentation, such as the dates on which CPO services were provided.

7.    It was further part of the scheme that the fabricated information submitted to Medicare served to conceal and cover up the fact that personnel at Medicall had not documented CPO services as required by Medicare regulations.

8.    It was further part of the scheme that on or about the dates indicated below, TALAGA submitted claims to Medicare that included fabricated information and that were not supported by required documentation:

| Instance | Defendant | Medicare Beneficiary | Purported Date of Service | Description of Items Billed | Amount Billed to Medicare |
|---|---|---|---|---|---|
| a | BROWN LUCERO TALAGA | A.B. | 6/11/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |
| b | BROWN LUCERO TALAGA | F.Q. | 7/9/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |

All in violation of Title 18, United States Code, Section 1035(a)(1).

11

## COUNTS NINE AND TEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     The allegations of Paragraph 1 and 2 of Count Eight are incorporated here.

2.     Beginning no later than in or about January 2010, and continuing until in or about December 2011, in the Northern District of Illinois and elsewhere,

RICK E. BROWN,
ROGER A. LUCERO, M.D., and
MARY C. TALAGA,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation in a matter involving a health care benefit program, that is, Medicare, in connection with payment for healthcare benefits, items, and services, namely, by submitting a claim to Medicare containing fabricated information, including the dates on which CPO was rendered, namely:

| Count | Defendant | Medicare Beneficiary | Purported Date of Service | Description of Items Billed | Amount Billed to Medicare |
|---|---|---|---|---|---|
| 9 | BROWN LUCERO TALAGA | R.C. | 6/18/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |
| 10 | BROWN LUCERO TALAGA | G.W. | 6/22/2010 | G0181 – Physician supervision of patient on home health care | $144.27 |

All in violation of Title 18, United States Code, Section 1035(a)(2).

## FORFEITURE ALLEGATION

The SPECIAL MARCH 2013 GRAND JURY further alleges:

1.     The allegations contained in Counts One through Seven of this Indictment are incorporated here for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

2.     As a result of the violation of Title 18, United States Code, Section 1347, as set forth in this indictment,

RICK E. BROWN and<br>
ROGER A. LUCERO, M.D.,

defendants herein, shall forfeit to the United States any property, real and personal, constituting, and derived from, gross proceeds traceable to the commission of the offence, obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 982(a)(7).

3.     The interests of defendants subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7) includes the sum of money of at least $4,491,865.

4.     If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

      i.     cannot be located upon the exercise of due diligence;

      ii.     has been transferred or sold to, or deposited with, a third party;

      iii.     has been placed beyond the jurisdiction of the Court;

      iv.     has been substantially diminished in value; or

      v.     has been commingled with other property that cannot be subdivided

            without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek to forfeit any other property of the defendants up to the value of the forfeitable property

described above.

All pursuant to Title 18, United States Code, Section 982(a)(7).

A TRUE BILL:

UNITED STATES ATTORNEY

UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION
DEPUTY CHIEF

14